IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DAN SILVER,

                    Plaintiff,                                    No. CV-11-92-HZ

        v.
                                                                  ORDER
BRENNAN J. MITCHELL, KARIN J.
IMMERGUT, and CASCADIA
BEHAVIORAL HEALTH, INC.,

                    Defendants.

Dan Silver, Pro Se
12231 SE Kelly St.
Portland, OR 97236

        Pro Se Plaintiff

Kenneth C. Crowley
OREGON DEPARTMENT OF JUSTICE, TRIAL DIVISION
1162 Court Street, NE
Salem, OR 97301-4096

        Attorney for Defendant Karen J. Immergut

1 - ORDER

Bruce A. Jones
MULTNOMAH COUNTY ATTORNEYS OFFICE
501 SE Hawthorne Blvd, Suite 500
Portland, OR 97214

      Attorney for Defendant Brennan J. Mitchell

LeAnn McDonald
SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SW Naito Parkway, Ste 500
Portland, OR 97204

      Attorney for Defendant Cascadia Behavioral Health, Inc.


HERNANDEZ, District Judge:

## INTRODUCTION

Plaintiff Dan Silver ("Silver" or "Plaintiff"), proceeding pro se, brings this action against defendants Brennan J. Mitchell ("Mitchell"), Judge Karin J. Immergut ("Judge Immergut"), and Cascadia Behavioral Health, Inc. ("Cascadia"). On June 30, 2011, I issued an order granting Judge Immergut's motion to dismiss all of Plaintiff's claims against her. Now before me are the motions for summary judgment (doc. #59 and #63) filed by Mitchell and Cascadia (collectively, "Defendants"), respectively. Also before me are Defendants' objections to the asserted facts in Plaintiff's response memorandum.

## BACKGROUND

On October 23, 2009, Plaintiff entered into a Petition to Plead No Contest and Waiver of Jury or Court Trial ("No Contest Plea") in Multnomah County Circuit Court to a violation of a court stalking order, a Class A misdemeanor. See Decl. of Brennan J. Mitchell ("Mitchell Decl."), Ex. 1, p. 1. That same day, October 23, 2009, Judge Immergut entered a judgment

2 - ORDER

against Plaintiff requiring him to "continue mental health treatment at Cascadia" and sentencing

Plaintiff to bench probation for a term of one year.[1]  See Id.

On May 2, 2010, Judge Immergut issued an order transferring Plaintiff's bench probation

to "formal probation" and recommended he see a mental health probation officer.  See Id., Ex. 2,

p. 1.  Pursuant to Judge Immergut's May 2, 2010, order, Plaintiff was assigned to the Mentally Ill

Offender Unit of Multnomah County Adult Community Justice ("Mentally Ill Offender Unit"),

where Plaintiff's case was assigned to Mitchell.  See Id., ¶ 2.  Mitchell is a parole and probation

officer who has been working at the Mentally Ill Offender Unit since December 2001.  See Id.

Mitchell's responsibilities include meeting with probationers, monitoring their compliance with

court-ordered probation terms, and reporting to the sentencing judge any non-compliance or

violations of probation terms by probationers.  See Id.  Mitchell's job duties do not require him

to diagnose mental illnesses, prescribe medications, or administer medication to probationers.

See Id., ¶ 3.

On June 11, 2010, Plaintiff had his first appointment with Mitchell.  See Id., ¶ 6.  At the

appointment, Mitchell discussed with Plaintiff the conditions of his probation, including the

condition that he continue mental health treatment at Cascadia and continue to take all prescribed

antipsychotic medication for his schizophrenia.  See Id., ¶¶ 6-7.  In July 2010, Cascadia informed

Mitchell that Plaintiff had stopped taking his antipsychotic medication.  Id., ¶ 8.

On August 20, 2010, Mitchell met with Plaintiff and his case coordinators, Deborah Cate,

a psychiatric mental health nurse practitioner, and Danielle Taylor, a qualified mental health

_____

[1] The record indicates Plaintiff has been diagnosed with schizophrenia.  See Mitchell
Decl., Ex. 7, p. 2.

3 - ORDER

practitioner.  Id., ¶ 9.  Based on Plaintiff's complaints, Plaintiff's case coordinators changed the administration of Plaintiff's antipsychotic medication from routine injections to daily oral intake. Id.  To monitor Plaintiff's compliance with his new oral prescription, Plaintiff was required to report to Mitchell on a daily basis so that Mitchell could observe Plaintiff take his oral medication as directed.  Id.

Plaintiff, however, failed to report to Mitchell as directed after the August 20, 2010, meeting.  Id., ¶ 10; Id., Ex. 7, p. 2.  Pursuant to his duties as probation and parole officer, Mitchell submitted a Notice of Violation to Judge Immergut on August 30, 2010, notifying her of Plaintiff's failure to report to him on a daily basis and recommending an extension of Plaintiff's probation to October 2011.  Id., ¶ 10; Id., Ex. 7, p. 1-2.

Based on Mitchell's Notice of Violation, Judge Immergut issued an Order & Judgment Continuing Probation on September 16, 2010, finding Plaintiff in violation of his probation for failing to take his medications.   Id., ¶ 11; Id., Ex. 8, p. 1.  Judge Immergut also ordered that Plaintiff's probation be extended to October 22, 2011, and that he continue taking his medications.  Id., ¶ 11; Id., Ex. 8, p. 1.

On January 25, 2011, Plaintiff filed a complaint in the United States District Court for the District of Oregon.  To date, Plaintiff has filed three amended complaints.  His second amended complaint, filed on February 17, 2011, alleges he "became sick of cardiac dysrthmias and congestive heart failure . . . because of the medications [Defendants] were administering to [him] by injection for almost 24 months."  Second Am. Compl., p. 1.  It also alleges Mitchell "put [Plaintiff] at risk of sudden cardiac arrest syndrome . . . by continuing to forcefully administer Flufenazine Deconate [sic] to

[Plaintiff] even though [Plaintiff] had cardiac dysrhythmias and multiple warning signs of early cardiac arrest or sudden death syndrome." Id. Plaintiff's third amended complaint, filed on April 19, 2011, alleges "a deprivation of civil rights . . . under 42 USC § 1981," seeking monetary damages of one million dollars and injunctive relief from Defendants' alleged "indifferent treatment." Third Am. Compl., p. 1-2.

On May 31, 2011, I held a status conference pursuant to the Federal Rules of Civil Procedure 16. During the status conference, Defendants indicated their intentions to file motions for summary judgment. I issued a Summary Judgment Advice Notice on June 1, 2011, notifying Plaintiff of, among other things, the implications of and the legal standard for a motion for summary judgment pursuant to Fed. R. Civ. P. 56.

## STANDARDS

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. E.g., Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case. Id. at 325. Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" Id. at 324 (quotation omitted). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there

5 - ORDER

must be evidence on which the jury could reasonably find for the [non-moving party]."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

      In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  Id. at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment ."  Id.  However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  See Thornhill Publ'n Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

      Because Plaintiff is acting pro se, I construe his pleadings liberally.  See, e.g., King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  Plaintiff's third amended complaint alleges Judge Immergut's decision deprived Plaintiff of his constitutional rights pursuant to 42 U.S.C. § 1981 ("Section 1981").  See Third Am. Compl., p. 1.  I liberally construe Plaintiff's filings as also asserting violations of his civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983") and state law claims for personal injury.

### I. The Rooker-Feldman Doctrine

      Defendants contend that this court lacks subject matter jurisdiction over this action pursuant to the Rooker-Feldman doctrine.  I disagree.

      Under the Rooker-Feldman doctrine, "federal district courts lack jurisdiction to exercise appellate review over final state court judgments."  AmerisourceBergen Corp. v. Roden, 495 F.3d 1143, 1153 (9th Cir. 2007) (citation omitted).  "The doctrine bars a federal court's direct

6 - ORDER

review of issues actually decided by state courts as well as claims that amount to nothing more

than an impermissible collateral attack on prior state court decisions and that are inextricably

intertwined with the . . . forbidden appeal." Ignacio v. Judges of U.S. Court of Appeals for Ninth

Circuit, 453 F.3d 1160, 1166 (9th Cir. 2006).  The Ninth Circuit, however, has stated that "where

the federal plaintiff does not complain of a legal injury caused by a state court judgment, but

rather of a legal injury caused by an adverse party, Rooker–Feldman does not bar jurisdiction."

Noel v. Hall, 341 F.3d 1148, 1163 (9th Cir. 2003).  Here, Plaintiff complains of, among other

things, legal injuries caused by Defendants' actions.  Namely, Plaintiff alleges that Defendants'

administration of medications caused him to become "sick of cardiac dysrthmias and congestive

heart failure."  See Second Am. Compl., p. 1.  Such claims are not barred by the Rooker-Feldman

doctrine because they do not amount to an "impermissible collateral attack" on and are not

"inextricably intertwined" with Judge Immergut's state court rulings.  See Ignacio, 453 F.3d at

1166.  Accordingly, I find that this court has subject matter jurisdiction over this action.

## II.  Section 1983 Claims

As noted above, I liberally construe Plaintiff's pleadings as asserting violations under

Section 1983.  Section 1983 does not create any substantive rights but "is the vehicle whereby

plaintiffs can challenge actions by governmental officials."  Jones v. Williams, 286 F3d 1159,

1162-63 (9th Cir. 2002) (citations omitted).  The statute provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

7 - ORDER

**A. Section 1983 Claim Against Mitchell**

Plaintiff alleges a Section 1983 claim against Mitchell for "reinstat[ing his] probation for 13 months" and administering medication which caused him to become "sick of cardiac dysrthmias and congestive heart failure." <u>See</u> Second Am. Compl., p. 1.  Mitchell contends that Plaintiff's Section 1983 claim is barred by absolute immunity.  He argues that his involvement was limited to meeting with Plaintiff to ensure he was in compliance with Judge Immergut's judgment, including his compliance with medical orders and prescriptions, and making recommendations and findings to Judge Immergut based on his observations.

The Ninth Circuit has held that probation officers "act as 'an arm of the sentencing judge'" whose duty is to "engage in impartial fact-gathering for the sentencing judge" and therefore possess an absolute judicial immunity from damage suits under Section 1983 arising from acts performed within the scope of their official duties.  <u>Demoran v. Witt</u>, 781 F.2d 155, 157 (9th Cir. 1986) ("[P]robation officers preparing reports for the use of state courts possess an absolute judicial immunity from damage suits under section 1983 arising from acts performed within the scope of their official duties.") (citations omitted); <u>see also</u> <u>Bumpus v. Kamansky</u>, 121 F.3d 714 (9th Cir. 1997) (probation officers are "entitled to absolute immunity from § 1983 liability" because their roles are "integral to the judicial process").  Plaintiff provides no evidence supporting his allegation that Mitchell administered his medications or otherwise acted outside the scope of his official duties.  <u>See, e.g.</u>, <u>Anderson</u>, 477 U.S. at 248 (stating that pursuant to Fed. R. Civ. P. 56(e), a party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial") (internal quotations and citations omitted).

Accordingly, Plaintiff fails to satisfy his burden of proof, and Mitchell's motion for summary judgment is granted with respect to Plaintiff's Section 1983 claim.

**B. Section 1983 Claim Against Cascadia**

As noted above, I construe Plaintiff's filings as asserting a Section 1983 claim against Cascadia. Cascadia argues that it is "immune from any liability for carrying out Judge Immergut's order for the same reasons Judge Immergut and . . . Mitchell are immune from suit." Cascadia's Mem., p. 4. Cascadia's argument is unavailing.

Cascadia cites no authority, and I am not aware of any, standing for the proposition that a private, nonprofit service provider is entitled to absolute or qualified[2] immunity when it provides medical services to a probationer acting under a court order or judgment. Accordingly, I cannot conclude Cascadia is entitled to judgment as a matter of law on the basis of immunity.[3]

---

[2] The doctrine of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Public officials are generally immune from civil liability unless their actions violate clearly established law because "a reasonably competent public official should know the law governing his conduct." Id. Here, Cascadia is not a "government official" and is therefore not entitled to qualified immunity.

[3] Defendants also assert they are entitled to summary judgment as to Plaintiff's Section 1983 claim because Plaintiff has not plead or proven any actual injury. Contrary to Defendants' assertions, Plaintiff has plead actual injury, alleging that he became sick from the medications administered to him by Defendants. See Second Am. Compl., p. 1. In addition, actual injury need not be shown. See Draper v. Coombs, 792 F.2d 915, 921 (9th Cir. 1986). The Ninth Circuit has previously stated "that even when no actual damages are suffered as a result of a violation of section 1983, a plaintiff still may be entitled to nominal damages." Id.; see also Guy v. City of San Diego, 608 F.3d 582, 587 (9th Cir. 2010) (nominal damages are "intended to serve as a symbol that defendant's conduct resulted in a technical, as opposed to injurious, violation of plaintiff's rights") (citations omitted). Accordingly, that Plaintiff does not show he suffered actual injury in this instance is irrelevant to his Section 1983 claim.

9 - ORDER

However, Plaintiff's Section 1983 claim against Cascadia may fail on grounds not raised by Cascadia.[4]  "In order to survive a motion for summary judgment on a § 1983 claim, the plaintiff must establish a genuine issue of material fact that the defendant (1) acted under the color of state law, and (2) deprived him of a constitutional right."  Ewing v. City of Stockton, 588 F.3d 1218, 1223 (9th Cir. 2009) (citing Levine v. City of Alameda, 525 F.3d 903, 905 (9th Cir. 2008)).  "A person acts under color of state law, if he exercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  Dang Vang v. Vang Xiong X. Toyed, 944 F.2d 476, 479 (9th Cir. 1991) (internal citations and quotations omitted).  Here, Plaintiff does not allege or provide any evidence showing that Cascadia, a nonprofit service provider, was "clothed with the authority of state law."  Indeed, the record clearly demonstrates that although Plaintiff was subject to Judge Immergut's orders and judgments, Cascadia was not.  Furthermore, I am aware of no authority establishing that a nonprofit service provider is transformed into a state actor within the meaning of Section 1983 when it provides medical services to a probationer.

Pursuant to Fed. R. Civ. P. 56(f), Plaintiff is hereby given notice and fourteen days to set forth specific facts pursuant to Fed. R. Civ. P. 56 showing Cascadia acted under the color of state law and deprived him of a constitutional right under Section 1983.

---

[4]  Pursuant to Fed. R. Civ. P. 56(f), "[a]fter giving notice and a reasonable time to respond, the court may: . . . grant the motion [for summary judgment] on grounds not raised by a party . . . ."  "Sua sponte grants of summary judgment are only appropriate if the losing party has reasonable notice that the sufficiency of his or her claim will be in issue."  United States v. 14.02 Acres of Land More or Less in Fresno Cnty., 547 F.3d 943, 955 (9th Cir. 2008) (internal quotation marks omitted).  "Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment."  Portsmouth Square, Inc. v. S'holders Protective Comm., 770 F.2d 866, 869 (9th Cir.1985).

### III.  Section 1981 Claims

Defendants argue that Plaintiff's Section 1981 claim lacks merit because Plaintiff does not allege or present any facts showing Defendants discriminated against him on the basis of race.[5]  Section 1981 prohibits racial discrimination in the making and enforcement of contracts. See 42 U.S.C. § 1981.  The statute states, in pertinent part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."  42 U.S.C. § 1981(a). The statute also provides that "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

A defendant violates Section 1981 if: (1) plaintiff is a member of a racial minority; (2) defendant intentionally discriminated against plaintiff because of his or her race; and (3) the discrimination involved the making or enforcing of a contract.  See, e.g., Evans v. McKay, 869 F.2d 1341, 1344 (9th Cir. 1989); Morris v. Office Max, Inc., 89 F.3d 411, 413-14 (7th Cir. 1996); Green v. State Bar of Texas, 27 F.3d 1083, 1086 (5th Cir. 1994); Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).  Here, Plaintiff fails to present any facts showing that a genuine issue remains for trial regarding whether he is a member of a racial minority or that Defendants discriminated against him because of his race.  See Fed. R. Civ. P. 56(e).  Accordingly, Plaintiff fails to meet his burden of production to withstand summary

---

[5] Defendants' briefs both assert Plaintiff is Caucasian.  See Cascadia's Mem., p. 3; Mitchell's Mem., p. 8.  Plaintiff does not argue otherwise.

judgment with respect to his Section 1981 claim.  See Celotex Corp., 477 U.S. at 322 (summary

judgment is proper if the party opposing the motion "fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial").

## IV.  State Law Claims

### A. State Law Claims Against Mitchell

Mitchell argues that to the extent Plaintiff alleges state law claims for personal injury,

they should be dismissed pursuant to ORS 30.265(1).  Under the Oregon Tort Claims Act

("OTCA"), ORS 30.260-300, "the sole cause of action for any tort of officers, employees or

agents of a public body acting within the scope of their employment or duties and eligible for

representation and indemnification under ORS 30.285 or 30.287 shall be an action against the

public body only."  ORS 30.265(1).  Accordingly, a plaintiff who sues over the  tortious conduct

of a state officer must name the public body, not the individual officer, as the defendant.  See

ORS 30.265(1).  As long as an employee was acting within the course and scope of his

employment at the time the allegedly tortious conduct occurred, the only proper claim is against

the public body itself.  Id.  "For an act to fall within the scope of employment, it must be of a

kind which the employee was hired to perform, must have occurred within authorized time and

space, and the employee must have been motivated, at least in part, by a purpose to serve [the

employer]."  Hasse v. Eugene, 735 P.2d 1258, 1259-60 (Or. Ct. App. 1987).

Here, Plaintiff asserts state law claims for personal injury against Mitchell individually.

Plaintiff fails to provide any evidence that Mitchell's conduct fell outside the scope of his

12 - ORDER

employment.  Thus, Michell's motion for summary judgment against Plaintiff's state law claims is granted.

**B.  State Law Claims Against Cascadia**

I decline to address at this juncture whether Plaintiff's state law claims against Cascadia survive summary judgement.  Cascadia merely asserts that "this court lacks subject matter jurisdiction because there is neither federal question or diversity jurisdiction."  Cascadia's Mem., p. 4.  As discussed above, however, Cascadia's arguments addressing Plaintiff's Section 1983 federal question claim were unavailing, and based on the arguments raised by this court, Plaintiff was given a reasonable time to respond pursuant to Fed. R. Civ. P. 56(f).  Accordingly, I am unable to determine at this stage whether this court has supplemental jurisdiction over Plaintiff's state law claims.  <u>See</u> 28 USC § 1367(a).[6]  I also decline to address at this juncture whether I will exercise supplemental jurisdiction over Plaintiff's state law claims against Cascadia absent original jurisdiction.  <u>See</u> 28 U.S.C. § 1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction").

---

[6] 28 U.S.C. § 1367(a) provides, in relevant part:

> Except as otherwise provided in subsection (b) and (c) or as expressly provided otherwise by Federal statute, <u>in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction</u> over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a) (emphasis added).

**CONCLUSION**

Based on the foregoing reasons, Mitchell's motion for summary judgment (doc. #59) is granted. Cascadia's motion for summary judgment (doc. #63) is granted in part. Specifically, Cascadia's motion for summary judgment is granted with respect to Plaintiff's Section 1981 claim. Plaintiff is hereby given notice of this court's intention to grant Cascadia's motion for summary judgment as to Plaintiff's Section 1983 claim. As discussed above, Plaintiff is given fourteen days to set forth specific facts pursuant to Fed. R. Civ. P. 56 showing that Cascadia acted under the color of state law and deprived him of a constitutional right under Section 1983. Because this court does not rely on any of the disputed facts in Plaintiff's response, Defendants' objections are denied as moot.

IT IS SO ORDERED.

Dated this ___15th_____ day of August, 2011.

/s/ Marco A. Hernandez
Marco A. Hernandez
United States District Judge

14 - ORDER